# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORMA I. SANTIAGO, *on behalf of herself and those similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>CAVALRY PORTFOLIO SERVICES, LLC, CAVALRY SPV I, LLC, JOHN DOES #1-10,<br><br>Defendants. | Civ. No. 2:15-cv-8332-KM-MAH<br><br>**OPINION** |

### KEVIN MCNULTY, U.S.D.J.:

The plaintiff, Norma I. Santiago, opened a JCPenney store credit card, incurred debt, and defaulted. The debt is currently held by defendants Cavalry Portfolio Services, LLC and Cavalry SPV I, LLC (together, "Cavalry"). Ms. Santiago sues Cavalry, on behalf of herself and all others similarly situated, for alleged violations of the Fair Debt Collection Practices Act ("FDCPA") and the New Jersey Consumer Fraud Act ("NJCFA"). Now before the court is Cavalry's motion for summary judgment.

1

## I. BACKGROUND[1]

### A. Factual History

Plaintiff Norma I. Santiago opened a JCPenney store credit card account in May 2006. (DSMF ¶ 1; PRSMF ¶ 1). Ms. Santiago claims that this credit card could be used at JCPenney only. (PRSMF ¶ 1). Cavalry states that in the relevant period the credit card could be used at JCPenney, CVS, Rite Aid, and Sephora.com. (ECF No. 37, ¶¶ 6-7). The applicable terms and conditions were mailed to Ms. Santiago at her home. (DSMF ¶ 2; PRSMF ¶ 2).

According to Cavalry, the terms and conditions for the JCPenney card state as follows: "You may use your Card or Account to purchase goods or services (including mail, internet, catalog and phone orders, if any) at JCPenney or other companies authorized to accept the Card ("Purchases") up to any limit ("Credit Limit") we may establish." (DSMF ¶ 4; PRSMF ¶ 4). Ms. Santiago, however, disputes that Cavalry has proffered the agreement that actually governs her card. (PRSMF ¶ 4). She also claims that the JCPenney card is a store card, not a "general purpose credit card" that can be used anywhere. (PRSMF ¶¶ 4-5).

JCPenney did not provide financing for the JCPenney card; financing was provided by GE Money Bank. (DSMF ¶ 10; PRSMF ¶ 10). Cavalry claims that JCPenney was not a party to the agreement between Ms. Santiago and GE Money Bank, but Ms. Santiago says it was. (DSMF ¶ 12; PRSMF ¶ 12). Ms. Santiago admits that neither GE Money Bank, GE Capital Bank, GE Capital Retail Bank, or Synchrony Bank (a successor of GE Capital Retail Bank) ever sold her goods or services. (DSMF ¶¶ 14, 20; PRSMF ¶¶ 14, 20).

---

[1]  Certain citations to the record are abbreviated as follows:

   DSMF = Cavalry Portfolio Services, LLC's and Cavalry SPV I, LLC's Statement of Material Facts Not in Dispute in Support of Their Motion for Summary Judgment (ECF No. 30-2)

   PRSMF = Plaintiff's Responsive Statement of Material Facts (ECF No. 37-1)

2

Ms. Santiago admits to making purchases with the JCPenney card until May 12, 2009. (PRSMF ¶ 6). Cavalry claims that Ms. Santiago used the card through October 2010. (DSMF ¶ 6). Ms. Santiago made her last payment on the JCPenney card on September 6, 2010. (DSMF ¶ 15; PRSMF ¶ 15). She defaulted on the amount owed in October 2010. (DSMF ¶ 15; PRSMF ¶ 15). On or about March 17, 2011, GE Money Bank wrote to Ms. Santiago regarding the debt owed on the JCPenney card. (DSMF ¶ 16; PRSMF ¶ 16).

On April 20, 2011, GE Money Bank sold, assigned, and transferred to Equable Ascent Financial, LLC ("EAF") all of GE Money Bank's right, title, and interest in Ms. Santiago's account. (DSMF ¶ 17; PRSMF ¶ 17). On July 2, 2013, EAF sold, assigned, and transferred to Cavalry SPV all of EAF's right, title, and interest in Ms. Santiago's account. (DSMF ¶ 18; PRSMF ¶ 18).

Ms. Santiago did not make any further payments on the JCPenney card after September 2010. (DSMF ¶ 19; PRSMF ¶ 19). On or about April 29, 2015, Cavalry filed suit in the Superior Court of New Jersey, Law Division, to collect the balance owing on the account. (DSMF ¶ 19; PRSMF ¶ 19). Cavalry claims the balance was $1,678.38. (DSMF ¶ 19).

### B. Procedural History

On or about November 4, 2015, Ms. Santiago filed an amended complaint against Cavalry in the Superior Court of New Jersey, Law Division. (ECF No. 1, ¶ 2; ECF No. 1-1). It alleged that Cavalry violated the FDCPA and the NJCFA; it sought to certify a class of others similarly situated. (ECF No. 1, ¶ 3; ECF No. 1-1, ¶ 1, ¶¶ 46-59). Cavalry removed the action to this federal court. (ECF No. 1).

Ms. Santiago alleges that Cavalry sought to collect an invalid debt. (ECF No. 13, ¶ 37). According to Ms. Santiago, the four-year statute of limitations in Article 2 of the Uniform Commercial Code ("Article 2") had expired when Cavalry filed its April 29, 2015 collection action. Cavalry disagrees, arguing that a six-year statute of limitations applies. Now before the court is Cavalry's motion for summary judgment. (ECF No. 30).

3

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of

4

material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. DISCUSSION

The nature of the FDCPA claim here is that the defendant attempted to collect a debt that was no longer actionable under the relevant statute of limitations. There are two potentially applicable limitations periods: four years and six years. It matters because this action was filed more than four years, but less than six years, after the alleged violation occurred. For plaintiff to maintain her claim, it is therefore necessary (but not sufficient) that the four-year statute of limitations be the one that applies.

Section III.A analyzes the legal principles governing the statute of limitations and credit card debt. Section III.B addresses whether there are factual issues that preclude summary judgment.

#### A. The Statute of Limitations and Credit Cards

The parties disagree as to which statute of limitations applies. Article 2 of the UCC governs transactions between buyers and sellers of goods. *See Midland Funding LLC v. Thiel*, 144 A.3d 72, 75 (N.J. Super. Ct. App. Div. 2016). As to such sales transactions, the UCC four-year statute of limitations contained in N.J. Stat. Ann. § 12A:2-725 applies.[2] On the other hand, an

---

2    N.J. Stat. Ann. § 12A contains New Jersey's version of the UCC. "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." N.J. Stat. Ann. § 12A:2-725(1).

5

action upon a written contract or an account receivable is governed by a general six-year statute of limitations. N.J. Stat. Ann. § 2A:14-1.[3] The question is essentially whether this is a single-store credit card, and therefore part of a sale of goods subject to Article 2 of the UCC, or whether it is a multi-store credit card, which is more akin to an extension of credit.

Ms. Santiago alleges that this was a dedicated, single-store card. Her purchases of goods on such a card, she says, should be regarded as installment transactions between JCPenney as seller and herself as buyer of goods. There is legal support for her view. New Jersey courts have held that the four-year statute of limitations applies to credit cards that can be used at one store only:

> [C]laims arising from a retail customer's use of a store-issued credit card—or one issued by a financial institution on a store's behalf—when the use of which is restricted to making purchases from the issuing retailer are subject to the four-year statute of limitations set forth in [N.J. Stat. Ann §] 12A:2-275.

*Thiel*, 144 A.3d at 75; *see McNamara*, 2014 WL 1057076, at *4 (finding that a Levitz card, which could be used only in the Levitz store "was a contract for the sale of goods for which payments were due in installments"). If an individual can use the store-issued credit card to buy goods from that retailer only, the credit-card agreement "is an installment contract for the sale of goods"—not a

---

"'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Chapter 8) and things in action." N.J. Stat. Ann. § 12A:2-105.

[3] Every action at law … for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued.

This section shall not apply to any action for breach of any contract for sale governed by [N.J. Stat. Ann. § 12A:2-275].

N.J. Stat. Ann. § 2A:14-1. *See Filgueiras v. Portfolio Recovery Assocs., LLC*, No. 15-cv-8144, 2016 WL 1626958, at *8 (D.N.J. Apr. 25, 2016).

"loan of money." *Filgueiras*, 2016 WL 1626958, at *8. Because such a sale of goods is subject to Article 2 of the UCC, the four-year UCC statute of limitations would apply.[4]

Compare the case of a general-purpose credit card, which may be used to buy goods at any establishment that accepts it. New Jersey courts have held that a credit card usable in multiple businesses or stores constitutes not a sale of goods but an extension of credit. *See New Century Fin. Servs., Inc. v. McNamara*, No. DC-16572-12, 2014 WL 1057076, at *4 (N.J. Super. Ct. App. Div. Mar. 20, 2014). Such a "loan of money" is not properly construed as the sale of goods. *See Filgueiras*, 2016 WL 1626958, at *8. Consequently, it does not fall under Article 2 of the UCC, and the general six-year statute of limitations for an action on a contract applies.

### B. Summary Judgment

Defendant Cavalry, as the moving party, has the burden on summary judgment to show that there is no genuine dispute over this fact and that therefore Ms. Santiago cannot win as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). Cavalry can discharge that burden, however, by showing "that there is an absence of evidence to

---

[4] Some non-New Jersey courts have stated or suggested that the six-year statute of limitations applies to store credit cards financed by a third-party bank. *See, e.g., Gray v. Suttell & Assocs.*, 123 F. Supp. 3d 1283, 1291 (E.D. Wash. 2015); *Asset Acceptance, LLC v. Witten*, No 90297, 2008 WL 2837304 at *1 n1, 2 n.2 (Ohio Ct. App. July 24, 2008); *Harris Tr. & Sav. Bank v. McCray*, 316 N.E.2d 209, 212 (Ill. 1974). Even the *Gray* court, however, recognized some limitations on that principle:

> In limited circumstances where a credit card is obtained from a seller or an entity closely related to the seller, rather than a separate third-party bank, and where the credit card can only be used to buy goods from that seller, the transaction may be deemed a sale of goods such that Article 2 applies.

*Gray*, 123 F. Supp. 3d at 1291. None of those cases applied New Jersey law. I take *Thiel*, which applies the UCC statute to a store-issued credit card or "one issued by a financial institution on a store's behalf" as articulating the governing standard in this case. 144 A.3d at 75.

support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325.

The issue is really a factual one. Cavalry claims that the JCPenney card could have been used, during the time Ms. Santiago used the card, at JCPenney, CVS, Rite Aid, and Sephora.com. (DSMF ¶ 8). Thus, says Cavalry, this is a dedicated store account, not a general credit card. Ms. Santiago denies this. The JCPenney card, she says, could be used at JCPenney only; in the alternative, she says, those other stores are so closely related to JCPenney that the card should be treated as a single-store card. (PRSMF ¶¶ 4-6). Either way, she argues, this is a store account in connection with a sale of goods, subject to Article 2 of the UCC.

Cavalry points to the card agreement.[5] The card agreement states the following: "You may use your Card or Account to purchase goods or services (including mail, internet, catalog and phone orders, if any) at JCPenney *or other companies authorized to accept the Card* ("Purchases") up to any limit ("Credit Limit") we may establish." (DSMF ¶ 4; PRSMF ¶ 4 (emphasis added)). That language, however, does no more than suggest that other companies *may* be authorized to accept the card, now or in the future. It does not rule out the possibility that JCPenney alone accepted the card in the relevant period.

Cavalry offers the declaration of Martha Koehler, Manager of Litigation Support at Synchrony. Koehler provides a bare statement that the JCPenney card could be used at those other three stores "[d]uring the time in which the Account was active." (ECF No. 30-3, ¶ 11; DSMF ¶ 8). This is rather vague; it does not forthrightly state whether this was true at all times or only at some

---

[5] By its terms, it is an agreement between the card holder and GE, not JCPenney as such. Santiago says her credit card bills came in an envelope that bore the name of JCPenney, although the bills also bore the name of the financing entity, GE. Santiago says there was a "joint venture" between JCPenney and GE, but offers no evidence in admissible form to establish that proposition. At any rate, however, *Thiel* would apply the UCC statute to a store-issued credit card or "one issued by a financial institution on a store's behalf." 144 A.3d at 75.

8

times within the relevant period, and it does not refer to any relevant document.

True, Ms. Santiago says the card could be used only at JCPenney. (PRSMF ¶ 8). It is not clear, however, that the relevant facts are within her personal knowledge. She testified in her deposition that she used the card only at JCPenney, and that the card does not bear a MasterCard or Visa logo. (ECF no. 30-11 at 6–7, Dep. pp. 15, 21–22) The parties do not dispute Ms. Santiago's testimony that *she* obtained the card from JCPenney and that *she* used it only for purchases at JCPenney. She does not state that she attempted unsuccessfully to use the card at another business. But the burden on this motion is not on her.

I may even assume *arguendo* that Cavalry is correct that the JCPenney card could be used at three other businesses (CVS, Rite-Aid, Sephora.com). The relationship among those businesses is not of record. And I cannot resolve the fact-bound issue of whether this is more like a financing arrangement for the purchase of goods, or more like a general-purpose extension of credit. [6]

It may be that neither party has done the necessary discovery to permit the court to analyze the economic substance of the JCPenney account. For the present, however, it is enough that the evidence is not so one-sided in Cavalry's

---

[6] Certain items, though not part of the summary judgment record, are suggestive in this regard.

The New Jersey Superior Court, Appellate Division, noted in *Thiel* that a party obtained a JCPenney credit card, issued by GE Money Bank, for use only at JCPenney stores in 1998 and used it until 2008. *Midland Funding LLC v. Thiel*, 144 A.2d 72, 76 (N.J. Super. Ct. App. Div. 2016). That statement, if true, would not strictly rule out either party's position in this case. Still, Ms. Santiago used the card from May 2006 until she defaulted in October 2010; *Thiel* at least suggests the possibility that for some period of time Ms. Santiago's card could be used at JCPenney only.

Synchrony's website speaks, not in terms of credit cards, but rather in terms of financing purchases on behalf of retailers—for example, "We work with thousands of retailers across the US. Find businesses that offer financing in your area now." https://www.mysynchrony.com/ This too is suggestive, though not part of the record.

9

favor that I can grant its motion for summary judgment on the statute of limitations issue.

## IV. CONCLUSION

For the foregoing reasons, defendant Cavalry's motion for summary judgment is denied. An appropriate order accompanies this opinion.

Dated: June 5, 2018

*[signature]*

**KEVIN MCNULTY**
**United States District Judge**

10